**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**DANIEL O. HARTENSTINE,**

  **Petitioner,**

  v.                                               **Civil Action No. 24-1838 (JEB)**

**UBER TECHNOLOGIES, INC.,**

  **Respondent.**

---

**MEMORANDUM OPINION**

Petitioner Daniel O. Hartenstine suffered serious injuries when he was dragged 20 feet by an Uber while on vacation in Mexico. He now brings this suit to compel Uber to arbitrate this case under the agreement contained in its U.S. Terms of Use and requests that the Court appoint JAMS in Washington, D.C., as the arbitrator. Uber counters that the ride was summoned on Petitioner's father's Uber account, which is governed by the Mexican Terms of Use mandating arbitration in the Netherlands. As Respondent is correct that the Mexican Terms control, the Court will deny Hartenstine's Petition. This is a preliminary decision, however, because the Dutch arbitrator must ultimately determine which country's terms apply and, if Mexico's, the merits of the suit.

### I.    Background

During a family vacation in Mexico City in 2021, Hartenstine's father downloaded the Uber application and consented to the Mexican Terms. See ECF No. 1 (Compl.), ¶¶ 13–15; ECF No. 7 (Response) at 2. When he called an Uber two days later, however, disaster ensued. See Compl., ¶¶ 13–15; Response at 2. Petitioner's parents got into the car first, but as he tried to

follow them, the driver sped off before he could fully enter the vehicle.  See Compl., ¶¶ 14–15.
Hartenstine was then dragged approximately 20 feet by the Uber with one of his legs wedged
under the driver's seat and the other trailing behind him on the street.  Id., ¶ 15.  The incident
caused severe injuries for which Petitioner has had to obtain medical care.  Id., ¶ 16.

Seeking compensation almost two years later, Hartenstine commenced a 60-day informal
dispute-resolution process with Respondent, which failed to produce an agreement.  Id., ¶¶ 20–
21.  In January 2024, he subsequently sent Uber a demand to initiate arbitration and to confer
regarding the selection of an arbitration provider.  Id., ¶ 21.  After firing off another letter to
Respondent four days later and having waited just 13 days in total from the date of his initial
demand, Petitioner sent yet a third letter — this time proposing JAMS here in Washington as the
arbitration provider.  Id.  He noted that if he did not hear from Respondent within two weeks, he
would assume that the company had agreed to his proposal.  Id.  Uber remained silent.  Id.
Wasting no time, on February 20, Hartenstine filed a demand for arbitration with JAMS.  Id.,
¶ 22; see also ECF No. 1-2 (Stephanie A. Casey Decl.), ¶ 12.

Finally appearing on the scene, Uber objected to JAMS's appointment, arguing that the
Mexican Terms of Hartenstine's father's agreement governed this dispute, meaning that the
arbitration should take place in the Netherlands.  See Compl., ¶ 23; Casey Decl., ¶ 13.  JAMS
subsequently closed the case "in light of [Uber's] objection and absent a court order or express
agreement of the parties."  Compl., ¶ 23.  Petitioner has now filed the instant matter asking the
Court to compel arbitration led by JAMS.  Uber has opposed.

II.   **Analysis**

In his Petition, Hartenstine contends that the U.S. Terms apply to this case and that, even if they do not, Uber has waived its right to compel arbitration in another jurisdiction. The Court considers both issues in turn.

A.   Controlling Terms

Petitioner downloaded the Uber application in the U.S. in 2010 and agreed to the U.S. Terms. See ECF No. 1-1 (Daniel O. Hartenstine Decl.), ¶ 3; Compl. at 2. Since this is his only contract with Uber, he asserts that those terms require that any dispute he has with the company must be assessed by an American arbitrator. See Compl. at 2; ECF No. 10 (Reply) at 2–3. Petitioner further contends that regardless of whether the U.S. Terms ultimately apply, those terms state that an American arbitrator must preliminarily decide which terms govern. See Compl. at 13–14; see also Casey Decl., Exh. 1 (U.S. Terms of Use § 2(a)(4)) ("An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable[.]"). As a result, he argues that this Court should send the matter to JAMS for decision. See Compl. at 13–14.

Uber responds that Hartenstine's contract is not implicated in this case, so the fact that he agreed to the U.S. Terms is irrelevant. See Response at 5–6. Instead, Uber maintains, the contract that made the ride possible — i.e., Hartenstine's father's contract — governs. Id. Bolstering this point, Respondent cites myriad cases where courts have held that when Passenger A calls an Uber for himself and a guest (Passenger B), Passenger B must bring any resulting dispute with Uber under Passenger A's contract with the company. See id.; see, e.g., Hughes v. Uber Techs., Inc., No. 23-1775, ECF No. 69 (Order) at 21–22 (E.D. La. Feb. 21, 2024) (finding dispute between Uber and woman who rode in her daughter's Uber governed by daughter's Uber

contract); Snow v. Uber Techs., Inc., 2023 Cal. Super. LEXIS 84446, at *7–8 (Cal. Super. Ct. Oct. 10, 2023) ("[T]he contract containing the agreement . . . cover[s] both Ferguson, the application user, and Plaintiff, another passenger who also benefitted from use of the Uber application.").

Resisting the inferences of this precedent, Petitioner states that in each of those cases Passenger A had agreed to the U.S. Terms, which expressly cover passengers.  See Reply at 5; ECF No. 1-2 at 9 (U.S. Terms of Use) ("This Arbitration Agreement shall be binding upon, and shall include any claims brought by or against any third parties, including but not limited to your spouse, domestic partner, heirs, estate, third-party beneficiaries and assigns, where their underlying claims arise out of or relate to your use of the Services. To the extent that any third-party beneficiary to this agreement brings claims against the Parties, those claims shall also be subject to this Arbitration Agreement.").  The Mexican Terms, conversely, recognize only a "limited class of third-party beneficiaries" and conspicuously do not include guests in that class. See Reply at 3–6; ECF No. 7-3 (Mexican Terms) at 3 ("Apple Inc, Google, Inc, Microsoft Corporation or BlackBerry Limited and/or their corresponding subsidiaries or international affiliates will be third party beneficiaries to this agreement.").  Hartenstine thus concludes that because his claims may not be covered under his father's contract, he may pursue his dispute under the U.S. Terms.  See Reply at 3–6.

This results-based interpretation is an odd way of approaching a contract dispute.  Indeed, there are several problematic implications of construing the Mexican Terms in the way that Petitioner recommends.  It cannot be the case, for example, that if Passenger B has a U.S. Uber account and is injured in Passenger A's Uber in Mexico, she can arbitrate in the U.S., but if Passenger B does not have a U.S. Uber account, she must arbitrate in the Netherlands.  Similarly,

if there are passengers from three different countries in an Uber accident, the outcome cannot be that they can force Uber to arbitrate in three separate jurisdictions.  This would risk inconsistent results arising from a single accident.  Sensible precedent thus dictates that Passenger B — *i.e.*, Petitioner — must arbitrate his case under Passenger A's Uber contract — *i.e.*, the Mexican Terms his father accepted.

Turning next to Petitioner's argument that an American arbitrator should decide which terms apply in the first place, the Court notes that the Mexican Terms contain a similar clause, so this issue is a wash.  <u>See</u> Response, Exh. 3 (Mexican Terms of Use) at 10 ("Any dispute, controversy, claim or dispute of any kind whatsoever arising out of or relating in any material respect to these Terms and Conditions, including those relating to their validity, interpretation and enforceability . . . , shall necessarily be submitted to mediation proceedings.").

Shifting to the defensive, Hartenstine also asserts that he did not consent to the Mexican Terms, so he cannot be forced to arbitrate his dispute under them.  <u>See</u> Compl. at 12–13; Reply at 2–3.  Uber counters that the case "unequivocally stems from" Petitioner's reaping the benefits of his father's contract, so he can be forced to arbitrate under the provisions in that contract regardless of his acceptance.  <u>See</u> Response at 6.

Generally, a party must sign an arbitration agreement to be subject to arbitral jurisdiction. <u>See</u> <u>EEOC v. Waffle House, Inc.</u>, 534 U.S. 279, 293 (2002) ("The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'") (quoting <u>Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.</u>, 489 U.S. 468, 478 (1989)).  A non-signatory to an arbitration agreement may be bound by that agreement, however, if it follows general principles of state contract law.  <u>See</u> <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 630 (2009) (While the

FAA "creates substantive federal law regarding the enforceability of arbitration agreements, . . . background principles of state contract law" control the interpretation of the scope of such agreements, "including the question of who is bound by them."); see also Oehme, Van Swed. & Assocs., Inc. v. Maypaul Trading & Servs. Ltd., 902 F. Supp. 2d 87, 97 (D.D.C. 2012); Signature Tech. Solutions v. Incapsulate, LLC, 58 F. Supp. 3d 72 (D.D.C. 2014). Under local principles of estoppel, "a party with full knowledge of the facts, wh[o] accepts the benefits of a . . . contract . . . may not subsequently take an inconsistent position to avoid the corresponding obligations or effects." Fairman v. District of Columbia, 934 A.2d 438, 443 (D.C. 2007) (quoting Thoubboron v. Ford Motor Co., 809 A.2d 1204, 1212 (D.C. 2002)).

Here, Petitioner accepted the benefits of his father's contract with Respondent by entering (or at least attempting to enter) the Uber that his father ordered, regardless of whether he physically clicked "accept" on the Mexican Terms. Hartenstine's contractual contentions therefore do not sway the Court from its conclusion that this arbitration is governed by his father's Uber terms and must take place in the Netherlands.

B. Waiver

Our next stop is Petitioner's waiver argument, which also runs into a dead end. Hartenstine asserts that even if the Mexican Terms govern the case, Uber waived its right to compel arbitration under any other terms by participating in the informal dispute-resolution process specified in the U.S. Terms. See Reply at 6–7.

The Court must determine whether Uber acted inconsistently with its right to compel arbitration in the Netherlands through its behavior in the informal dispute-resolution process. See Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc., 821 F.2d 772, 774 (D.C. Cir. 1987) ("The essential question is whether, under the totality of the circumstances, the defaulting

party has acted inconsistently with the arbitration right.").  In determining this question, the Court looks to caselaw in which courts assess whether a party waives its right to compel arbitration by participating extensively in litigation.  In that context, "[c]ourts assess, among other things, whether a party timely sought arbitration; [and] whether the party now moving for arbitration engaged in litigation activity that induced the other party . . . 'to expend time and effort on disputes, the resolution of which would not' move the dispute toward arbitration." Partridge v. Am. Hosp. Mgmt. Co., LLC, 289 F. Supp. 3d 1, 17 (D.D.C. 2017) (quoting Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919, 922–24 (D.C. Cir. 2011)).

In Khan v. Parsons Global Services, Ltd., 521 F.3d 421 (D.C. Cir. 2008), for example, the Circuit found that the defendants had waived their right to compel arbitration when they filed a motion for summary judgment.  Id. at 428; see also Nat'l Found for Cancer Rsch., 821 F.2d at 774 (granting waiver when party filed answer asserting fifteen affirmative defenses and instigated extensive discovery); U.S. for Use & Benefit of DMI, Inc. v. Darwin Const. Co., 750 F. Supp. 536, 538–39 (D.D.C. 1990) (granting waiver when plaintiff "filed eight motions . . . requesting preliminary relief and attempting to manipulate discovery boundaries . . . [,] argued a motion for a preliminary injunction and filed a motion to compel discovery . . . [,] conducted fairly extensive discovery, . . . [and] moved to change the trial date"). Waiver has not been found, however, when a party takes the minimal actions required to keep the case live while waiting to assert a right to compel arbitration.  See Davis Corp. v. Interior Steel Equip. Co., 669 F. Supp. 32 (D.D.C. 1987) (finding defendant did not waive right to compel arbitration by filing action to protect against statute of limitations or by participating in minimal discovery).  The caselaw thus clarifies that parties must take significant steps in another proceeding in order to be deemed to have waived their right to compel arbitration.

Applying such standard to this case, in which both parties seek arbitration but disagree on the appropriate forum, the Court finds that Uber sought to compel arbitration in the Netherlands in a reasonable timeframe, alerting Petitioner of its stance and refusing to begin arbitration in the U.S. directly after the informal dispute-resolution process.  Uber also did not take such significant steps in the American arbitration forum that it induced Petitioner to expend resources here.  More specifically, regardless of what Respondent did in the informal dispute-resolution process — which Petitioner does not elaborate on — its participation was akin to taking minimal actions to keep the case alive.  The Court therefore concludes that Uber's actions do not amount to the type of activity that would constitute a waiver of its right to compel arbitration in the Netherlands.

* * *

The only remaining issue is whether this case should now be dismissed.  Courts in this district have held that when there are no issues left for the court to resolve, dismissal is appropriate.  See Mobile Now, Inc. v. Sprint Corp., 393 F. Supp. 3d 56, 72 (D.D.C. 2019); Dist. No. 1, Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n, AFL-CIO v. Liberty Mar. Corp., 2019 WL 224291, at *6 (D.D.C. Jan. 15, 2019); Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 2006 WL 1793295, at *3 (D.D.C. June 28, 2006).  Because there are no further disputes in this case, the Court will take that approach here.

## III.   Conclusion

For these reasons, the Court will issue a contemporaneous Order denying the Petition to Compel Arbitration and dismissing the case.

8

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  October 3, 2024